UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:25-cr-60273-PCH

UNITED STATES OF AMERICA

**Plaintiff**

**vs.**

**PHILIP MICHAEL VALCIN, JR. (5),**

**Defendant**

_____/

### DEFENDANT VALCIN'S NOTICE OF UNRESOLVED OBJECTIONS AND SENTENCING MEMORANDUM

1.      On March 19, 2026, the defendant pled guilty to Counts 1 and 30 of a 43-count Indictment. Count One charged him with conspiracy to commit bank fraud and wire fraud, in violation of 18 U.S.C. § 1349. Count 30 charged him with aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).

2.      Pursuant to a written plea agreement, the government agreed to dismiss Counts 9, 13, 18, 34 and 39 of the Indictment, as to Mr. Valcin, after sentencing.

3.      Mr. Valcin was not named in other counts of the Indictment.

4.      A presentence investigation was conducted, and a Draft Report ("Draft PSR") was made available on May 8, 2026.

5.      Valcin filed Objections to the PSR and a Motion for Variance. [DE 215]

6.      The government did not have any objections to the Draft PSR.

7.      On June 5, 2026, Probation published an Addendum and Final PSR to be used at sentencing, which did not resolve all objections made by Defendant Valcin. [DE 222]

8.      On June 7, 2026, the government filed a Sentencing Memorandum and a response to Valcin's Objections and Motion for Variance. [DE 222; 223]

### THE ADVISORY GUIDELINE CALCULATION IN THE PSR

9.      Valcin has a Base Offense Level ("BOL") of 7 [PSR, ¶69] and Special Offense Characteristics which add 20 offense levels to the BOL, for an adjusted offense level of 27. [PSR, ¶¶ 70-76]

10.     Valcin is expected to receive a three-level reduction in his offense level for acceptance of responsibility thereby reducing his offense level to 24 [PSR, ¶¶78-80].

11.     According to the PSR, Valcin has six criminal history points and thus falls within Criminal History Category III. [PSR, ¶87]

### VALCIN'S UNRESOLVED OBJECTIONS TO PRESENTENCE REPORT

**I.      Mitigating Role Adjustment**

Valcin's objection to Probation's failure to recommend a mitigating role adjustment remains outstanding.

In considering a mitigating role adjustment, the court should consider all probative facts involving the defendant's role and evaluate the "totality of the circumstances." *United States v. Jimenez,* 756 F. App'x 909, 911 (11th Cir. 2018) (Citations Omitted). The court should determine the relevant conduct for which a defendant has been held accountable at sentencing and then consider the defendant's "role as compared to that of other participants in his relevant conduct." *Id.*

In this case, the defendants are being held accountable for a total intended loss of $2,095,831. [PSR, ¶70]. The PSR does not evaluate or identify the roles of each co-defendant in the conspiracy other than indicating pictures of Defendants Thomas and Chambers were used to create fake

government Ids and Defendants Thomas and Chambers' real-time selfies were used in the application process. The PSR does not identify who obtained the personal identifying information of the victims, or the leader and organizer of the scheme. The individual withdrawals of each defendant using the debit cards issued by Bank of America ("BOA") are listed in ¶¶30-53 and referenced in the Table on page 5 of Valcin's Objections to Draft PSR and Motion for Variance filed at DE 215. Probation denied a mitigating role adjustment for Mr. Valcin despite the fact Mr. Valcin received very little money from the scheme (11 ATM transactions of $1000 each) and despite his role being less than most of his co-defendants, as measured by their withdrawals from BOA ATMs. Consequently, Mr. Valcin should receive a reduction in his offense level under §3B1.2 of at least 2 levels, reducing his advisory guideline range on Count 1 to Level 22 (51-63 mos.)

## II.   **Loitering**

Valcin objects to ¶82 and the assessment of one (1) criminal history point for his loitering conviction.  Under § 4A1.2(c)(2), sentences for loitering "are never counted." In its Addendum, Probation argues one point should be assessed since Valcin violated probation and subsequently was sentenced to 45 days imprisonment.

The government, in its response, reiterates Probation's position but also states that the Guidelines provide what the defense has argued, that a conviction for Loitering is never counted.

Probation's reasoning concerning the Loitering conviction is illogical and unsupported by the Guidelines. If Valcin were sentenced to a term of imprisonment originally for a loitering conviction, he would not have received any criminal history points because "Loitering" is never counted under §4A1.2(c)(2). The Guidelines do not state a "never counted conviction" becomes countable if the defendant is given probation and subsequently violates the terms of his probationary sentence.

3

Since a loitering conviction is never counted even if a defendant violates his original probationary sentence, the Court should find that Valcin has five criminal history points. However, the reduction does not affect his criminal history category which remains a III.

### III.   Valcin's Objection to Paragraph 141

Valcin objected to ¶141 which states "probation officer has not identified any factors which may warrant a sentence outside the guideline range." On the contrary, Valcin believes there are reasons supporting a downward variance on Count I and filed a Motion for Downward Variance from the advisory Guideline Range as part of his original objections.

Valcin incorporates his Motion for Variance in this Memorandum and argues the factors referenced in his Motion for Variance supports a sentence below the advisory guideline sentence under Count 1.

### IV.   Reply to the Government's Filings

In its response to Valcin's Objections and Motion for Variance [DE 224], the government argues:

a) The "11" ATM transactions that Valcin cites reflect only those instances for which Bank of America retained video surveillance of him withdrawing fraudulent UI funds which does not establish the total number of withdrawals he made, nor reflect the net fraud proceeds he ultimately received.

b) The number of ATM withdrawals in cases like this do not correlate to culpability—in fact, there is often an inverse correlation, that the leaders and organizers frequently direct underlings to make ATM withdrawals to shield their own involvement, and that co-defendants Chambers and Thomas made dozens of ATM withdrawals at co-

      conspirators' request and told investigators they returned more than 90% of those proceeds to the individuals directing the scheme.

c) Valcin's criminal history—including convictions for burglary, grand theft, fraud/impersonation, and credit-card-related fraud—undercut his assertion that he played a minor role, and his prior convictions support the conclusion that that his involvement extended beyond making ATM withdrawals of UI funds. and included, for example, the use of Valcin's phone number to activate multiple debit cards, several of which were used to withdraw fraudulent UI funds by Valcin and at least one other co-defendant (Thomas).

The government does not offer any evidence to support its speculation that Valcin made other withdrawals not captured on video. Likewise, the government's argument that there "often" is an inverse correlation between culpability and the number of withdrawals is simply conjecture. Although the government claims "leaders and organizers frequently direct underlings to make ATM withdrawals" and that "co-defendants Chambers and Thomas made dozens of ATM withdrawals at co-conspirators' request and told investigators they returned more than 90% of those proceeds to the individuals directing the scheme", the "leaders and organizers" who directed the unidentified "underlings" to make withdrawals or the individuals to whom Chambers and Thomas returned 90% of the withdrawn proceeds are not identified by the government or by Probation in the PSR.

Finally, while the government cites Valcin's criminal history in support of a guideline sentence, it ignores Valcin's efforts to change his life by enrolling in college[1] months before his arrest

---

[1] Verification of Valcin's enrollment at Broward College is attached as Exhibit 1.

on November 20, 2025, his taking a more active role in the care of his minor children. [PSR, ¶¶ 105; 115] and Mr. Valcin's attendance at weekly therapy sessions since January 13, 2026. [DE 215; Exhibit 1]. In short, the Philip Valcin of 2026 is not the same Philip Valcin who participated in the charged conduct from April 12, 2021 through November 17, 2021 when he made the withdrawals in question. [PSR, ¶58]

### V.      The Court's Notice of Sentencing Issues [DE 227]

On June 9, 2026, this Court filed a notice that the parties should be prepared to discuss two issues at sentencing:

> (1)      Whether the disparity in the number of withdrawals attributed to each of the Defendants should be taken into account in determining the fair and reasonable sentences for each of the Defendants; and
>
> (2)      Whether the funds withdrawn by each Defendant were kept by that Defendant or shared with his Codefendants.

The disparity in the number of withdrawals attributed to each of the defendants and the sharing of withdrawals among defendants and others, is relevant to the individualized findings a court must make under U.S.S.G. § 1B1.3 (Relevant Conduct) and in determining a reasonable sentence under 18 U.S.C.A. §3553(a)(history and characteristics of a defendant and circumstances of his crime).

Under U.S.S.G. § 1B1.3, relevant conduct that determines a defendant's offense level in jointly undertaken criminal activity includes the defendant's own acts plus the acts of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity.

"[T]o determine a defendant's liability for the acts of others, the district court must first make

individualized findings concerning the scope of criminal activity undertaken by a particular defendant." The scope of a defendant's jointly undertaken activity is not necessarily the same as the scope of the entire conspiracy, so the relevant conduct for each coconspirator likewise is not necessarily the same. U.S.S.G. § 1B1.3, cmt. (n.3(B))." *United States v. Barry*, 163 F.4th 1346, 1350 (11th Cir. 2026). *See also, United States v. Hunter,* 323 F.3d 1314, 1320 (11th Cir. 2003)

Under 18 U.S.C.A. §3553(a), the Court must also consider the history and characteristics of the defendant and the ***circumstances of his offense*** in fashioning a sentence no greater than necessary. Section 3553(a)(6) also requires a court to avoid unwarranted sentencing disparities in fashioning a sentence.

In this case, the Court has the withdrawals each defendant made, and little other information, to avoid sentencing disparities among the codefendants in this case. "Contrary to Emmanuel's contention, the district court did not compare in a rote manner Emmanuel's 30-month sentence to Mathieu's 36-month sentence or St. Louis's 24-month sentence. Rather, the district court articulated several reasons why Emmanuel was not similarly situated to his codefendants and thus why it rejected Emmanuel's unwarranted disparity claim. These reasons included that: (1) Emmanuel and his codefendants played ***different roles*** in the fraud scheme; (2) Emmanuel and his codefendants were responsible for ***different loss amounts***..." *United States v. Emmanuel*, 807 F. App'x 958, 964 (11th Cir. 2020).

The only measures offered by Probation in the PSR for the roles of each defendant and the amounts attributable to each defendant are the ATM withdrawals each made. For Mr. Valcin, his withdrawals were made on 11 occasions in the amount of $1000.00 each. The Court's sentence should reflect what little money Valcin received in this offense.

## CONCLUSION

This Court should sustain Valcin's Objections and grant his Motion for a variance. Valcin should receive a below-guideline sentence on Count 1, to be followed by the two-year consecutive sentence for Count 30.

Respectfully Submitted,

**s/JAMES A. SWETZ**
James A. Swetz, Esq.  (Florida Bar Number 0893668)
Attorney Email Address: jaswetz@jaswetzlaw.com
2312 Wilton Drive, Ste 23
Wilton Manors, Fl. 33305
(Tel.) 954-800-6450
Attorney for Defendant Philip Michael Valcin, Jr.

## <u>CERTIFICATE OF SERVICE</u>

I, James A. Swetz, Esquire, Attorney for Defendant, hereby certify that I served a copy of

the foregoing Motion on June 11, 2026 by electronic delivery to all parties.

Respectfully Submitted,

s/**JAMES A. SWETZ**
James A. Swetz, Esq.  (Florida Bar Number 0893668)
Attorney Email Address: jaswetz@jaswetzlaw.com
2312 Wilton Drive, Ste 23
Wilton Manors, Fl. 33305
(Tel.) 954-800-6450
Attorney for Defendant Philip Michael Valcin, Jr.